******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE JOHELI V.*
(AC 41349)

Alvord, Sheldon and Prescott, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial court terminating his parental rights with respect to his minor daughter, J. *Held* that there was no merit to the respondent's claim that the trial court erred when it determined that he had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time he could assume a responsible position in J's life based solely upon his current incarceration for allegedly sexually assaulting J; although that court considered the respondent's incarceration, which it was entitled to do, it did not base its determination that the respondent failed to rehabilitate solely on the ground that he was incarcerated, which was one of many factors considered by the court, as the court determined that the respondent's efforts to rehabilitate were scant even before his arrest in that he had unresolved mental health and substance abuse issues, had a demonstrated inability to provide for J's physical and emotional needs, had neglected J's medical and dental needs, and had failed to comply with the specific steps previously ordered by the court, and those findings were all amply supported in the record.

(*One judge concurring separately*)

Argued June 5—officially released August 6, 2018**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondent's parental rights with respect to his minor child, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, and tried to the court, *Hon. Henry S. Cohn*, judge trial referee; judgment terminating the respondent's parental rights, from which the respondent appealed to this court; thereafter, the court issued an articulation of its decision. *Affirmed*.

*Stein M. Helmrich*, for the appellant (respondent).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

SHELDON, J. The respondent father, Luis V., appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, Joheli V.[1] On appeal, the respondent claims that the court erred when it determined, pursuant to General Statutes § 17a-112 (j) (3) (B), that he had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of Joheli, he could assume a responsible position in her life, based solely upon the fact that he is currently incarcerated and awaiting trial for allegedly sexually assaulting Joheli.[2] We affirm the judgment of the trial court.

On August 6, 2015, the petitioner, the Commissioner of Children and Families, filed a neglect petition in the interest of Joheli, who has cerebral palsy and is confined to a wheelchair, alleging that she was neglected in that she was being permitted to live under conditions injurious to her well-being. On September 21, 2015, Joheli was adjudicated neglected and a six month period of protective supervision with the respondent was ordered. The court further ordered the respondent to comply with several specific steps to safely retain custody of Joheli. Those steps directed the respondent, among other things, to: develop stronger parenting skills in the areas of supervision, hygiene, educational support and medical care; increase his understanding of Joheli's developmental issues; develop a support system to assist with childcare responsibilities; maintain a safe, nurturing and sober environment for Joheli; provide consistently for Joheli's specialized medical needs; attend recommended treatment consistently and comply with all aspects of his treatment plans; and develop strategies to maintain sobriety and establish sober supports.

On November 9, 2015, Joheli reported to her school tutor that she had been sexually assaulted by the respondent. The tutor reported the incident to Joheli's teacher, who reported it to the police, who, in turn, contacted the petitioner. Joheli was temporarily placed in the custody of her maternal cousin, Rebecca Soto. The court again ordered the respondent to comply with several specific steps to regain custody of Joheli.

On January 28, 2016, Joheli was committed to the care and custody of the petitioner until further order of the court. The court again issued specific steps to the respondent.

On April 6, 2016, the respondent was arrested on charges of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). He has been incarcerated, awaiting trial, since that date.

On March 15, 2017, the petitioner filed a petition to

terminate the respondent's parental rights. The petitioner alleged that the Department of Children and Families (department) had made reasonable efforts to reunify Joheli with the respondent, but that the respondent was unable or unwilling to benefit from those reunification efforts. The petitioner further alleged, in accordance with § 17a-112 (j) (3) (B), that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of Joheli, he could assume a responsible position in her life. The petitioner set forth the following facts in support of that allegation.[3] "At the time of Joheli's removal the presenting problems were [the respondent's] unaddressed mental health and substance abuse issues, allegations of sexual abuse by him and his inability to demonstrate an ability to protect and meet Joheli's needs on a daily basis.

"[The respondent] has a history of mental health and substance abuse issues. These concerns appeared to have intensified around the death of his children's mother . . . . [The respondent] has a historic inability to provide for the physical and emotional needs of his children evidenced by leaving them unsupervised on several occasions while under the influence. [The respondent's] substance abuse is evidenced by reports to the department of him being under the influence. [The respondent] has had criminal charges, which included breach of peace, stemming from his substance abuse issue. Based on the department's records, [the respondent] has participated in a variety of treatment programs including individual and group therapy with little benefit or change achieved. A significant barrier to his ability to make progress toward rehabilitation is his incarceration based on the allegations of sexual abuse. [The respondent] has failed to benefit, gain knowledge, and make positive changes from these services as evidenced by continuing to abuse substances and failing to address his mental health. [The respondent] continues to fail to meet the demands of adulthood, let alone the demands of parenthood. Additionally, he has failed to appropriately and genuinely address his mental health [or] substance use despite access to services to assist him in doing so."

The petitioner noted that Joheli, then eight years old, has "medically complex issues and requires an adequate caregiver in order for her to appropriately grow emotionally, developmentally, medically and physically and who must meet every aspect of her basic needs."

The petitioner concluded: "[The respondent] is unable to meet his own basic needs at this time and therefore unable to properly care for Joheli, who has severe medical needs. [The respondent] has been observed to minimize his substance use and the severity of his mental health concerns. [The respondent] will

not be able to fully resume [the role of] a responsible party in the life of his child within a reasonable time period."

On July 25, 2017, the petitioner moved to amend the termination petition to include an allegation, pursuant to § 17a-112 (j) (3) (D), that there was no ongoing parent-child relationship between the respondent and Joheli, which motion was granted on August 22, 2017.

On November 9, 2017, after a trial, the court orally granted the termination petition. The court found that the department made reasonable efforts to reunify the respondent with Joheli, but that the respondent "did not really seize upon these opportunities and improve his situation." The court further found, by clear and convincing evidence: "[The respondent] had unaddressed mental health and substance abuse issues. There was an allegation, not proved yet, of sexual abuse by him of the child, [he] has a history of mental health and substance abuse issues and these concerns appear to have intensified around the death of the child's mother, [he] has a . . . historic inability to provide for the physical and emotional needs of his children.

"And . . . [the respondent] turned down in-home care services. He also neglected various health issues of the child. She's got cerebral palsy. She's clearly got to have medical attention periodically, dental attention, and that was not shown to have happened.

"And the idea is that even if he somewhat engaged in these, he did go to a therapist and he had some sessions with a therapist and was trying to work on these problems, the statute requires that . . . there be a second portion of it, that even if this is going on, that there be a reasonable time under which this reunification and resolution, rehabilitation could—the child would and the father would resolve his problems and take into account the needs of the child. We don't see that happening here.

"At the time, he was—at the time of the filing of the termination petition, he was just not meeting the standards. The child was reporting trauma due to drinking. The poor kid was trying to pick up her father [from the floor] and couldn't do it with her . . . cerebral palsy . . . ." The court further found that the respondent was not in compliance with the specific steps that had been issued, and there was no evidence that "the [respondent has] made realistic and sustained efforts to conform . . . his conduct to even a minimally accepted parental [standard]. Giving him additional time will not likely bring his performance . . . within acceptable standards." On the basis of the foregoing, the court concluded, in accordance with § 17a-112 (j) (3) (B), that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the

age and needs of Joheli, he could assume a responsible position in her life.[4] The court further concluded that termination was in Joheli's best interest and, accordingly, terminated the respondent's parental rights.

On March 19, 2018, the trial court issued an articulation of its decision, reiterating that it "made no adjudicative finding on ground D, [that there was no ongoing relationship between the respondent and Joheli]. . . . The finding on ground B by clear and convincing evidence that father had unaddressed mental health and substance abuse issues, that he ignored his daughter's health issues, that he had declined in-house services and had an alcoholic incident involving the daughter. It further found that the father could not address these issues in a reasonable time period given the age and needs of the child. He is presently incarcerated. The child was experiencing trauma due to her relationship with her father." The court declined to "further articulate on ground D."[5]

The respondent claims on appeal that the trial court erred in terminating his parental rights on the ground that he had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of Joheli, he could assume a responsible position in her life, pursuant to § 17a-112 (j) (3) (B). Specifically, he claims that the court erred in basing that determination solely upon his current incarceration for allegedly sexually assaulting Joheli. We are not persuaded.

"Our Supreme Court has clarified that [a] conclusion of failure to rehabilitate is drawn from both the trial court's factual findings and from its weighing of the facts in assessing whether those findings satisfy the failure to rehabilitate ground set forth in § 17a-112 (j) (3) (B). Accordingly . . . the appropriate standard of review is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . We will not disturb the court's subordinate factual findings unless they are clearly erroneous. . . .

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [that the parent has] achieved, if any, falls short of that

which would reasonably encourage a belief that at some future date [he] can assume a responsible position in [his] child's life. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [his] ability to manage [his] own life, but rather whether [he] has gained the ability to care for the particular needs of the child at issue. . . . As part of the analysis, the trial court must obtain a historical perspective of the respondent's child caring and parenting abilities, which includes prior adjudications of neglect, substance abuse and criminal activity. . . .

"The statute does not require [a parent] to prove precisely when [he] will be able to assume a responsible position in [his] child's life. Nor does it require [him] to prove that [he] will be able to assume full responsibility for [his] child, unaided by available support systems. . . . In determining whether a parent has achieved sufficient personal rehabilitation, a court may consider whether the parent has corrected the factors that led to the initial commitment, regardless of whether those factors were included in specific expectations ordered by the court or imposed by the department. . . . In the adjudicatory phase, the court may rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Citations omitted; internal quotation marks omitted.) *In re Damian G.*, 178 Conn. App. 220, 237–39, 174 A.3d 232 (2017), cert. denied, 328 Conn. 902, 177 A.3d 563 (2018).

In challenging the court's finding that he failed to rehabilitate, the respondent argues that the court failed "to consider [his] incarceration status and the potential [that] he could be found innocent . . . [and that his] rights were terminated based on an allegation for which he maintains his innocence and has yet to face trial . . . ." (Citation omitted.) In so arguing, the respondent misconstrues the trial court's decision. Although the court considered the respondent's incarceration, which it is entitled to do, as acknowledged by the respondent himself; see, e.g., *In re Katia M.*, 124 Conn. App. 650, 661, 6 A.3d 86 (parent's unavailability, due to incarceration, properly considered "an obstacle to reunification"), cert. denied, 299 Conn. 920, 10 A.3d 1051 (2010); it did not base its determination that the respondent failed to rehabilitate solely on the ground that he was incarcerated. The court determined that the respondent's efforts to rehabilitate were scant even before his arrest. The court noted that the respondent had unresolved mental health and substance abuse issues, and a demonstrated inability to provide for the physical and emotional needs of Joheli. The court found that the respondent had neglected Joheli's medical and dental needs and failed to comply with the specific steps previously ordered by the court. The respondent does not

dispute these findings, which, we note, are amply supported in the record. It is clear from the record that the respondent's incarceration was only one factor of many upon which the court based its determination that he had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of Joheli, he could assume a responsible position in her life. The respondent's claim is therefore without merit.[6]

The judgment is affirmed.

In this opinion ALVORD, J. concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** August 6, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Joheli's mother passed away unexpectedly in January, 2015, due to a medical condition.

[2] Section 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition [terminating parental rights] if it finds by clear and convincing evidence that . . . (3) . . . (B) the child . . . has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[3] The petitioner also alleged, pursuant to § 17a-112 (j) (3) (C), that Joheli had been denied, by reason of an act or acts of parental commission or omission including, but not limited to, sexual molestation or exploitation, severe physical abuse or a pattern of abuse, the care, guidance or control necessary for her physical, educational, moral or emotional well-being. The petitioner withdrew that allegation prior to trial.

[4] The court indicated that it would was "going to go with ground B because I think it's the simplest and clearest here."

[5] Because the trial court addressed only the petitioner's claim that the respondent failed to rehabilitate, and declined to adjudicate the petitioner's claim that the respondent's parental rights should be terminated because he had no ongoing relationship with Joheli, this court issued an order, sua sponte, instructing the parties to be prepared to address at oral argument the issue of whether there is an appealable final judgment in this case pursuant to *Meribear Productions.*, *Inc.* v. *Frank*, 328 Conn. 709, 183 A.3d 1164 (2018), in which our Supreme Court held: "[W]hen the trial court disposes of one count in the plaintiff's favor, such a determination implicitly disposes of legally inconsistent, but not legally consistent, alternative theories. When a legally consistent theory of recovery has been litigated and has not been ruled on, there is no final judgment." Id., 723–24. Because the two statutory grounds alleged by the petitioner in this case, grounds B and D, are not different theories of recovery, as contemplated in *Meribear*, but, rather, are simply two alternative bases upon which the court could have based its adjudication of a single cause of action, termination of the respondent's parental rights, we conclude that *Meribear* does not apply to this case, and thus that the respondent has properly appealed from a final judgment over which we have subject matter jurisdiction.

[6] The respondent also claims that the court's determination that the termination of his parental rights was in Joheli's best interest should be reversed if we determine that the court erred in finding that he failed to rehabilitate. Because we affirm the court's determination that the respondent failed to rehabilitate, and his claim to the contrary was the sole basis for his challenge to the best interest finding, his claim that the court erred in concluding that termination was in Joheli's best interest also fails.